IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 7:16-cr-00069 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| BRIAN EDWARD RODEN | ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

On May 18, 2020, defendant Brian Edward Roden, proceeding *pro se*, filed a motion for release to home confinement pursuant to the CARES Act. (Dkt. No. 274.) In accordance with local Standing Order 2019-1, the court appointed the Federal Public Defender (FPD) and ordered the FPD to file a supplement to Roden's motion. (Dkt. Nos. 275, 276.) The FPD filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing that the spread of COVID-19 through the Federal Medical Center, Lexington (FMC Lexington), where Roden is currently housed, in conjunction with Roden's underlying diagnosis of hepatitis C, constitutes an extraordinary and compelling reason warranting a reduction in Roden's sentence. (Mot., Dkt. No. 283.) The motion is fully briefed, and the court finds that a hearing on the motion is not necessary. For the reasons stated below, the court will deny Roden's motion.

I. BACKGROUND

On February 16, 2017, Roden was charged by superseding indictment with one count of conspiracy to possess with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Dkt. No. 70.) He pled guilty to count one of the superseding indictment on July 6, 2017. (Dkt. Nos. 112, 114.) The court sentenced Roden to eighty-seven months in the custody of the Bureau of Prisons (BOP) and four years of supervised release, departing downward from the United States Sentencing Guidelines (USSG) sentencing range to

account for Roden's substantial assistance and giving credit for time served for relevant conduct in state custody. (Dkt. No. 272.) Although Roden was sentenced in September 2019, he has been in custody since July 2016, serving a state sentence. He is scheduled to be released in October 2024. (Mot. 1, 4 n.4.)

In light of the recent spread of COVID-19, Roden has filed a motion for compassionate release, arguing that, because had has been diagnosed with hepatitis C, he is at greater risk of severe illness from the virus. He supports his diagnosis with copies of his medical records from the BOP. (Dkt. No. 284-1.) Roden further notes that the Centers for Disease Control (CDC) has recognized that people with serious underlying medical conditions may be at higher risk of severe illness from COVID-19.

Roden asserts that the measures taken by the BOP to prevent the spread of COVID-19 have largely been unsuccessful at FMC Lexington. As of the date Roden filed his motion, seventy-eight inmates and five staff at FMC Lexington had tested positive for COVID-19 and five inmates had died. Additional inmates and staff have reportedly recovered from the virus. (Mot. 2.)

Roden also reports that he has had no disciplinary issues in BOP custody and that "[h]is approximately five-year, meth-related downward spiral ended in July 2016." If the court grants his motion for release, Roden plans to live with his sister and ten-year-old son. (*Id.* at 4.)

## II. ANALYSIS

### A. Compassionate Release

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act and in pertinent part, provides that the court may not modify a term of imprisonment once it has been imposed except that:

2

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

In addition to satisfying the above, the reduction must be "consistent with applicable policy statement issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission's policy statement on compassionate release is set forth in U.S. Sentencing Guidelines § 1B1.13. The Policy provides, in pertinent part, that under § 3582(c)(1)(A), the court may reduce a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a)," the court determines that:

> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. In the application notes, the Policy recognizes extraordinary and compelling reasons with regard to medical conditions (terminal illnesses or serious conditions that diminish self-care abilities), age with deterioration and significant time served, family circumstances, and other extraordinary and compelling reasons other than, or in combination with, the above reasons. U.S.S.G. § 1B1.13 n.1.

A defendant seeking relief under § 3582(c)(1)(A) has "the burden of establishing that compassionate release is warranted." *United States v. Heromin*, No. 8:11-CR-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). Compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). Rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 n.3.

**B. Exhaustion**

In his motion, Roden states that he submitted an electronic request for release to the warden at FMC Lexington on April 17, 2020. He filed his *pro se* motion on May 18, 2020, more than thirty days after filing his request with the warden. Roden reports that he has not received a response to his request. The government does not suggest otherwise. Thus, the court finds that Roden has satisfied the exhaustion requirement of § 3582(c)(1)(A).

**C. Extraordinary and Compelling Reasons**

Roden relies on the catchall provision of § 3582(c)(1)(A)(i) and the related USSG Policy Statement, U.S.S.G. § 1B1.13n.1(D), arguing that his health condition and the outbreak of COVID-19 in the BOP and his facility constitute extraordinary and compelling reasons supporting his release. "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Harper*, No. 7:18-cr-00025, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020). Roden cites numerous cases in which courts have granted compassionate release to inmates diagnosed with hepatitis C. He asserts that these cases show that defendants with hepatitis C are particularly susceptible to COVID-19.

As the government points out, however, these cases each involve defendants whose hepatitis C is but one of many underlying medical conditions or exacerbating factors. For example, many of those cases involve defendants whose age puts them at higher risk of COVID-19 or whose hepatitis C is accompanied by heart or lung conditions that are known to create a higher risk of severe illness in COVID-19 patients. *United States v. Etzel*, No. 6:17-cr-00001-AA, 2020 WL 2096423, at *4 (D. Ore. May 1, 2020) (defendant suffered from hypertension, hepatitis C, heart-related issues, and chronic bronchitis and was an "advanced age"); *United States v. Hammond*, No. 02-294 (BAH), 2020 WL 1891980, at *1 (D.D.C. Apr. 16, 2020) (seventy-five-year-old defendant had resurgent prostate cancer, hypertension, and hepatitis C); *Miller v. United States*, No. 16-20222-1, 2020 WL 1814084, at *1, *4 (E.D. Mich. Apr. 9, 2020) (sixty-nine-year-old defendant suffered chronic lung disease, a serious heart condition, hepatitis C, and cirrhosis of the liver).[1]

By contrast, regarding hepatitis C, the CDC states, "[c]urrently, we have no information about whether people with hepatitis B or hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19." *Coronavirus Disease 2019 (COVID-19): People with Liver Disease*, Centers for Disease Control and Prevention (last reviewed July 9, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html. The court acknowledges that the CDC has warned of higher risk for "older adults and *people of any age who have serious underlying medical conditions*, including people with liver disease . . . particularly if the underlying medical conditions are not well controlled." *Id.* (emphasis added). It further recognizes that hepatitis C is a liver infection that may result in

---

[1] As Roden notes, many of the cases cited by the government were decided before the spread of COVID-19 and are largely inapplicable here. *See, e.g.*, *United States v. Howard*, No. 4:15-CR-00018-BR, 2019 WL 7041860 (E.D.N.C. Dec. 20, 2019); *United States v. Casey*, No. 1:06CR00071, 2019 WL 1987311 (W.D. Va. May 6, 2019); *United States v. Adams*, 6:94CR302, 2019 WL 3751745 (M.D.N.C. Aug. 8, 2019).

long-term, chronic infections affecting the liver. *Viral Hepatitis: Hepatitis C Information*, Centers for Disease Control and Prevention (last reviewed July 9, 2020), https://www.cdc.gov/hepatitis/hcv/index.htm. But Roden, who is in his forties, is relatively young, and the Clinical Director at FMC Lexington reports that his hepatitis C is "managed at a functionally acceptable level." (Dkt. No. 286-1.) This is not a case where Roden has a combination of medical issues or even one of the enumerated serious conditions set forth in the CDC guidelines.

To be clear, the court does not intend to minimize the burden of living with hepatitis C or the potential for complications arising from the hepatitis C virus. Likewise, the court acknowledges the BOP's recent difficulty curbing the spread of COVID-19 in FMC Lexington. However, at this time, Roden's condition appears to be under control, and Roden has not alleged that he has suffered any liver damage or other long-term medical issues associated with or resulting from his hepatitis C. In fact, Roden's Presentence Investigation Report, prepared in 2019, does not indicate that Roden had hepatitis C at the time, suggesting that he only recently contracted or was diagnosed with the illness. As the CDC states, there is no information about whether Roden's condition places him at an increased risk of contracting COVID-19 or of COVID-19 resulting in a severe illness.[2] At least one other court has denied a motion for compassionate release in similar circumstances. *See United States v. Hilliard*, No. 17 CR 35-01 (VB), 2020 WL 3182778 (S.D.N.Y June 15, 2020) (denying a motion to release by a defendant who was forty years old with asymptomatic hepatitis C but no other high-risk ailments).

---

[2] The court does not presume to be a medical expert and reaches its conclusion only after considering the resources provided in the parties' briefs. Notably, the only medical doctor to weigh in is Dr. Myriam Melendez-Rosa, who is the Clinical Director at FMC Lexington. (Dkt. No. 286-1.) Otherwise, the court is left to consider the CDC's guidance, which provides little insight into the risks of COVID-19 in patients with hepatitis C.

Accordingly, the court finds that Roden has not met his burden to show extraordinary and compelling reasons warranting his release.

### D. Section 3553(a) Factors

Even if the court found that extraordinary and compelling reasons existed, it would nonetheless exercise its discretion to deny Roden's motion. Roden notes that his criminal conduct was largely related to his addiction to methamphetamine. Because his "meth-related downward spiral ended in July 2016," he suggests he is unlikely to recidivate. (Mot. 4.) However, the court already took this into account when granting a downward variance in Roden's sentence from the advisory guideline range of 188 to 235 months. The court specifically noted that it departed and varied downward because of Roden's cooperation with the government, his lack of a scored felony criminal history, his lack of violence, and the fact that he was, in part, feeding his own drug habit.

At sentencing, the court noted that Roden's sentence reflected the seriousness of the offense, deterred the defendant from future crime, provided just punishment, and protected the public from further crimes by Roden. *See* 18 U.S.C. § 3553(a)(2). Roden's sentence further avoided unwarranted sentence disparities between he and his codefendants and other defendants with similar records guilty of similar conduct. *Id.* § 3553(a)(6). Roden still has approximately four years remaining on his sentence. Though COVID-19 poses a novel threat both to Roden and other inmates housed in BOP facilities across the country, the court has reviewed the sentencing factors in § 3553(a) and finds that his sentence is still sufficient and not greater than necessary to comply with the purposes of § 3553.

## III.  CONCLUSION

For the reasons stated above, it is hereby ORDERED that Roden's motions for compassionate release (Dkt. Nos. 274, 283) are DENIED.  The clerk is directed to provide a copy of this order to the defendant, all counsel of record, and the United States Probation Office.

Entered: July 9, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge